Breitel, J.
In an article 78 proceeding, appellant appeals from an order of the Appellate Division, Third Department, affirming, by a divided court, the refusal of respondent State Liquor Authority, after a hearing, to grant appellant a restaurant liquor license.
The application was disapproved “ [d]ue to [the association of applicant’s principal, Mr. Sife,] with known narcotic users frequenting the premises and upon consideration of all the facts ”. Since this is a new application, the issue is whether the determination was arbitrary and capricious. The Appellate Division held that the “ probative evidence in the record *610 barely qualifies ” to substantiate the determination. The dissenting Justice found that the proof consisted solely of “ [sjurmise, speculation and hearsay” and was “ grossly inadequate ”. It is concluded that no evidence was adduced which could rationally support the Authority’s finding that issuance of a license to appellant “ would create a high degree of risk in the administration and enforcement of the Alcoholic Beverage Control Law.”
The Authority based its decision primarily on the testimony of one Thomas Mayone, an investigator for the Ulster County Sheriff’s office. Mr. Mayone testified that several “known narcotics users ” and “ the beatnik set ” frequented the applicant’s premises. Mr. Mayone defined “ beatniks ” as persons with “long hair,.beards, real sloppy, dirty dress.” He specified that Eddie Heath, who had been convicted of possession of marijuana, had been with Mr. iSife about a dozen times; Peter Allen, who had been indicted for possession of marijuana, had been seen at the premises talking to Mr. Sife two or three times; and Marcharlene Harris, who had also been indicted for possession of marijuana, had been in the applicant’s premises on numerous occasions, although she had never been in personal contact with Mr. Sife. The witness further stated that “ everyone in Woodstock ” knew Heath, Allen, and Miss Harris used narcotics, and that he had personally seen Miss Harris use them. Mr. Mayone also testified that Mr. Sife told one Thomas O’Brien, special investigator for the narcotics squad, that he (Mr. Sife) smoked marijuana and thought “ there was no evil in it.”
The only other evidence as to Mr. Sife’s contact with narcotics was an affidavit by one Barry Walsh, an informant, who stated that he and some others, including Heath and Allen, had bought a $10 bag of marijuana from Mr. Sife in July 1964. Mr. Walsh’s credibility was successfully impeached by a letter regarding his reliability, and documentary evidence that Heath was in jail at the time in question. The hearing officer placed no credence in Mr. Walsh’s affidavit.
The Authority also had received several letters of protest, sometimes rambling and sometimes incoherent, from one Martin Steffanson, a neighbor, who complained about the noise which would result from the granting of the license.
*611 Applicant introduced affidavits and testimony from 10 other residents in the community attesting to the high character of Mr. Sife and the quality of applicant’s restaurant. Mr. Sife himself testified that he had never sold marijuana or any narcotic drug to anyone, and had never used any habit-forming drug either on or off his premises. He also testified that he knew Heath had been in jail and that Heath had been on his premises once in 1965 to help a friend pick up some machinery; that Allen, whom he knew, had not been on the premises at any time in 1964 or 1965; and that Miss Harris, whom he knew, had been on the premises in 1964 and 1965 and he had spoken to her. He admitted that some of the people who came to his restaurant were drug users, but that he hoped it was not a “ hangout ” for such people.
The evidence supports a finding that Mr. Sife knew three people who had police records concerning their use of marijuana. However, there was no evidence introduced to show that Mr. Sife was aware that these three patrons of his restaurant were drug users. His assertion that some of his customers were drug users was not based on knowledge concerning specific persons but simply on the “ law of probabilities.” Even assuming that Mr. Sife had such specific knowledge, as the proprietor of a public restaurant he surely would not have been able to bar entry to “ beatniks ” or even to persons with criminal records, unless their presence created a likelihood that the premises would become disorderly. Yet even Mr. Mayone testified that the premises were orderly, as did the witnesses for applicant.
More important, there was no showing that Mr. Sife was a personal friend of Heath, Allen, or Miss Harris. His association with them, so far as this record goes, was solely that of a proprietor to a patron. It cannot be said that by virtue of the patronage of three marijuana users, only one of whom frequented the restaurant regularly, the premises became a “ hangout ” for drug users. And it was not shown, nor can it be said, that the business association between applicant and the three drug users would lead to the premises becoming such a hangout.
It should be noted that the testimony of Mr. Mayone, as well as the testimony of Mr. Sife and his witnesses, indicated that *612 the Woodstock community was a summer colony for artists and those whom Mr. Mayone would describe as “beatniks”. The concentration of such people in a community would inevitably affect the nature of the patronage of any place of public accommodation. And it is also likely, as Mr. Sife himself admitted, that among the “ artistic ” or “ beatnik” set would be several persons who had used or were using marijuana or narcotic drugs. As has already been pointed out, however, Mr. Sife would have no right or reason to exclude as customers individual members of a larger group which constituted a fair proportion of the summer population of the community, unless their patronage created, or tended to create, disorder. A different result might be indicated if the restaurant were patronized by a concentration of homosexuals, drug users, or recidivists, a concentration of clientele which might, even without overt activity, permit inference of violations or likelihood of violations of law. Quite the contrary situation is presented here. With the exception of Mr. Steffanson, whose objectivity is suspect, all residents of the community testified that the restaurant was quiet and that a large proportion of its patrons consisted of older persons and family groups.
In short, there is no evidence to support the conclusion that because of Mr. Site’s alleged incidental association with known drug users, issuance of a restaurant liquor license to applicant would create a high degree of risk in the enforcement of the Alcoholic Beverage Control Law. The discretion of the Authority in denying a new application for a license, or a renewal application, is broader than in revoking or suspending a license, and this court is limited to a determination “ 1 whether the record discloses circumstances which leave no possible scope for the reasonable exercise of that discretion’” (Matter of Wager v. State Liq. Auth., 4 N Y 2d 465, 468; cf. Matter of Migliaccio v. O’Connell, 307 N. Y. 566, 569). However, even this broad discretion must rest on a foundation of rationality (Matter of Stork Rest. v. Boland, 282 N. Y. 256, 273; Matter of Playdium, lne. v. O’Connell, 276 App. Div. 14, 16-17, affd. 301 N. Y. 538; Matter of 54 Cafe & Rest. v. O’Connell, 274 App. Div. 428, 431, affd. 298 N. Y. 883).
Where the Authority’s conclusions are based on speculative inferences unsupported by the record its determination should *613 be annulled (Matter of Matty’s Rest. v. New York State Liq. Auth., 21 A D 2d 818, affd. 15 N Y 2d 659 [history of disorder-lines s of premises under prior owners does not warrant conclusion that location would inevitably lead to disorderliness]; Matter of Clara & Bernard Rest. v. New York State Liq. Auth., 22 A D 2d 871, 872 [denial of license based on “ sensitive neighborhood ”, but no showing that applicant would be unable to maintain orderly premises]; Matter of Waverly Rest. Corp. v. State Liq. Auth., 24 A D 2d 985, 986 [no showing that premises disorderly or that granting license would change character of premises]; Matter of 238 Rest. v. New York State Liq. Auth., 19 Misc 2d 975, 978 [speculation that operation of premises would in future be in violation of rules of Liquor Authority unjustified]).
As in the above cases, the denial of the application in this case could only be justified by a conclusion that the nature of the clientele would create a substantial danger of violation of the rules and regulations of the Authority. Such a conclusion is without foundation in reason or evidence, and the Authority’s determination was, therefore, arbitrary and capricious.
Accordingly, the order of the Appellate Division should he reversed, with costs, and the matter remanded to the State Liquor Authority for reconsideration of the application, in accordance with this opinion.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Jasen concur.
Order reversed, with costs in this court and in the Appellate Division, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.