[807 NYS2d 74]

In the Matter of INTEGRATED BEVERAGE GROUP LTD., Appellant,
v NEW YORK STATE LIQUOR AUTHORITY, Respondent.

First Department, January 10, 2006

**APPEARANCES OF COUNSEL**

*Mehler & Buscemi*, New York City (*Martin P. Mehler* of counsel), for appellant.

*Thomas G. McKeon*, New York City (*Scott A. Weiner* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

At issue on this appeal is the refusal of respondent State Liquor Authority (SLA) to approve the proposed labeling of an alcoholic beverage known as "Freaky Ice," which is to be sold in grocery and convenience stores. As the name implies, "Freaky Ice" (characterized on the labels as a "malt beverage with natural flavors") is intended to be consumed when frozen solid, which is unusual for alcoholic beverages. Like many ice treats appealing to children, "Freaky Ice" is packaged in packets, from which a person apparently extrudes the frozen product to consume it. The product comes in three different fruit flavors (Passion Cocktail, Cherry Fusion, and Lemon Stinger). Although the "Freaky Ice" labels indicate that the product contains alcohol, and should not be sold or served to children, the SLA accurately noted that this warning is set forth in "small type."[1]

The question presented is whether the SLA could rationally conclude, pursuant to its authority under Alcoholic Beverage Control Law § 107-a (2), that the proposed labeling of "Freaky Ice" fails to avoid the likelihood of "deception of the consumer," and fails to "afford [the consumer] adequate information as to [the] quality and identity" of the product. In our view, the SLA plainly had a rational and nonarbitrary basis for concluding that the proposed labeling presents an unacceptable risk of deceiving the public about the nature of "Freaky Ice." Accordingly, we affirm Supreme Court's confirmation of the SLA's determination.

Significantly, petitioner itself essentially admits that the "Freaky Ice" labels do not suffice to alert consumers to the alcoholic nature of the product. Specifically, petitioner has stated that it intends to give retailers of "Freaky Ice" the following instructions regarding the product:

> "We strongly advise that if the retailer has no freezer wholly dedicated to alcoholic beverages, then

---

**1.** Although the dissent asserts that the admonition "Do not serve to children!" is "prominently noted" on the labels (dissenting op at 164), the warning, which is in much smaller lettering than the brand and flavor names, is not so prominent as to exclude its being overlooked. In any event, the SLA could rationally so conclude, as is evident from a review of the labels themselves.

the product should be sold at room temperature. Under no circumstances should the product be mingled with non-alcoholic beverage products in a retailer's freezer.

"When selling the product at room temperature, we strongly recommend that such product be kept separate and apart from any other non-alcoholic beverage products and only be included in those areas dedicated to alcoholic beverages.

"Whether the retailer sells the product in a frozen state or at room temperature, we strongly recommend that the retailer indicate, in writing, near to where such product is displayed, that it is an alcoholic beverage and will not be sold to anyone under the age of 21."

If the "Freaky Ice" labels were sufficient to warn all consumers of the product's alcoholic nature, the foregoing precautions would not be needed. It was neither arbitrary nor irrational for the SLA to disapprove the labels when petitioner itself implicitly concedes that the proposed labels do not, by themselves, sufficiently reduce the risk that the product will be inadvertently purchased by customers who intend to purchase nonalcoholic products, or will be purchased (whether intentionally or not) by customers below drinking age. The risk of such purchases is obvious, given the similarity of the product's form and appearance to that of a children's ice treat, and given the absence of any indication of alcohol content in the decidedly juvenile-sounding brand name, "Freaky Ice."

It is no answer to say that retailers will know not to sell "Freaky Ice" to persons below the age of 21, since (1) safeguards against selling alcoholic products to underage customers are never foolproof, and (2) adults may themselves be misled by the product's form and appearance into purchasing it for their children. With regard to the first point, the SLA could rationally conclude, even without conducting an empirical study, that a frozen alcoholic beverage, sold in packaging scarcely distinguishable, at first glance, from that of many ice treats, is likely to tempt children (whether or not they are aware of the alcohol content) to a much greater degree than alcoholic beverages that do not resemble child-oriented treats. There is nothing arbitrary or irrational in the SLA's view that to place such needless temptation in the path of underage customers will unduly test retailers' ability to prevent alcohol sales to children. Stated

otherwise, there is considerable logic in the SLA's conclusion that "the possibility of underage customers purchasing this product appears to be too feasible" and (while perhaps not artfully expressed by the SLA) that the labels are—in effect if not in intent—deceptive.

The SLA's previous approval of wine coolers, such as the Bartles & Jaymes line of beverages, should not preclude it from now disapproving the proposed "Freaky Ice" labels. In supermarkets and grocery stores, wine coolers are sold in areas dedicated to alcoholic beverages. In the case of "Freaky Ice," however, retailers are unlikely to have freezer sections dedicated to alcoholic beverages, and, therefore, the SLA could rationally conclude that the product is likely to be sold alongside nonalcoholic products.[2] Further, it is highly unlikely that anyone would confuse a wine cooler with a soft drink such as Coke, Pepsi, or even Snapple. It is all too likely, however, that "Freaky Ice" will be confused with ice treats, such as "freeze pops" (of which "Freaky Ice" appears to be an alcoholic version) or popsicles. The likelihood of confusion is only increased by the "Freaky Ice" packaging, which is very much like the packaging of nonalcoholic ice treats—a type of packaging that has never previously been associated with alcoholic beverages. Wine coolers, by contrast, are packaged in bottles and cans, as alcoholic beverages usually are, and long have been. In sum, the SLA could rationally conclude that there is much greater potential for confusing "Freaky Ice" with a nonalcoholic ice treat than there is for confusing a wine cooler with a nonalcoholic soft drink.

The dissent cites only two cases from the 1980s that resulted in the annulment of the SLA's disapproval of the labeling for an alcoholic beverage; both cases are inapposite, and, in any event, neither is binding on us. In the more recent case (*CIBCO Distrib. Co. v State Liq. Auth.*, NYLJ, Feb. 9, 1988, at 7, col 2 [Sup Ct, NY County]), the SLA had disapproved the label for so-called "Nude Beer" (which included a risqué picture) on the ground that "the proposed label would encourage underage drinking by appealing to a youthful market." The instant case is readily distinguishable from *CIBCO* in that here, unlike in *CIBCO*, the rationale for the SLA's disapproval of the labeling is that the product is easily *confused* with a child-oriented

---

2. Although petitioner instructs retailers not to mingle "Freaky Ice" with nonalcoholic products, petitioner does not claim that it has any ability to require retailers to avoid such mingling.

nonalcoholic product, and that the proposed labeling is (in the SLA's judgment) unlikely to prevent such confusion. The prevention of confusion and deception in the labeling of alcohol goes to the heart of the SLA's responsibility under Alcoholic Beverage Control Law § 107-a (2), and this vital concern simply was not implicated in *CIBCO*. The SLA's charge to prevent confusion in the labeling of alcohol also was not implicated in the other cited case in which the disapproval of a label was annulled, *Matter of Hawkeye Distilling Co. v New York State Liq. Auth.* (118 Misc 2d 505 [Sup Ct, NY County 1983] [involving vodka packaged in an apparatus intended to resemble an intravenous feeding device]). In *Hawkeye*, the label was disapproved primarily on grounds of taste, which, the court held, was outside the SLA's purview. Further, since *Hawkeye* involved vodka, there was no question of the product confusing or enticing underage customers in grocery and convenience stores.[3]

In sum, we have no basis in this case to interfere with the SLA's appropriate exercise of its discretion to disapprove the proposed "Freaky Ice" labels so as to prevent the product's being confused with nonalcoholic ice treats favored by children. While the dissent may believe that the SLA's concern about the possibility of such confusion is overstated, it is the SLA that the Legislature has invested with the responsibility to make the determination. The determination that the SLA has made concerning the "Freaky Ice" labels' potential for confusion and deception of the public cannot be said to be so arbitrary, capricious or irrational as to warrant annulment. Obviously, the SLA has exercised its authority to protect children from being deceived into using a product inappropriate for them. Since this action was both rational and within the administrative agency's lawful power, the challenged determination was properly confirmed.

Accordingly, the judgment of the Supreme Court, New York County (Nicholas Figueroa, J.), entered on or about December 27, 2004, which denied the petition to annul the SLA's determination denying petitioner's application to register proposed labeling for three malt beverage products and dismissed the proceeding, should be affirmed, without costs.

---

**3.** Still further afield from the instant case is *Bad Frog Brewery, Inc. v New York State Liq. Auth.* (134 F3d 87 [2d Cir 1998]), in which the SLA was held to have violated the First Amendment when it disapproved a beer label that depicted a frog making an insulting gesture. Not even petitioner contends that the instant case raises any First Amendment concerns.

CATTERSON, J. (dissenting). Because I believe that the State Liquor Authority (hereinafter referred to as SLA) exceeded the discretion given to it by section 107-a (2) of the Alcoholic Beverage Control Law, I respectfully dissent.

The petitioner applied for three different registrations for "Passion Cocktail," "Cherry Fusion," and "Lemon Stinger." The product in question is an alcoholic beverage that is intended to be frozen prior to consumption. The proposed label indicated that the product contains alcohol, it included the ubiquitous government warnings concerning dangers associated with consumption of alcohol, and the label prominently noted "Do not serve to children!"

Prior to the SLA's determination, the petitioner in a letter submission to the SLA outlined the precautions that the petitioner would undertake in the distribution of "Freaky Ice":

"Each carton of product sold by [petitioner] will contain instructions to the retailer which shall include the following:

"This product is an alcoholic beverage and may not be sold to anyone under the age of 21.

"Although it is recommended that this product be consumed frozen, it is not necessary to sell this product in a frozen (or refrigerated) state.

"We strongly advise that if the retailer has no freezer wholly dedicated to alcoholic beverages, then the product should be sold at room temperature. Under no circumstances should the product be mingled with non-alcoholic beverage products in a retailer's freezer.

"When selling the product at room temperature, we strongly recommend that such product be kept separate and apart from any other non-alcoholic beverage products and only be included in those areas dedicated to alcoholic beverages.

"Whether the retailer sells the product in a frozen state or at room temperature, we strongly recommend that the retailer indicate, in writing, near to where such product is displayed, that it is an alcoholic beverage and will not be sold to anyone under the age of 21.

"In addition to the above instructions, . . . each carton containing the individual packets of the product will clearly state that same is an alcoholic beverage product and is not to be sold or consumed by anyone under the age of 21."

On August 13, 2004, respondent disapproved petitioner's application, stating:

"The product for which the label is sought is proposed to be sold in grocery stores. It is recommended by the manufacturer that the product be frozen for 7 hours prior to *sale*. It is further recommended that it be sold in a frozen state . . .

"Advertising for the product . . . promotes it as the only alcoholic frozen popsicle in the world.

"The Authority is not satisfied that a product advertised as a popsicle which is a product not usually associated with one containing alcohol is an appropriate product to be sold in an environment where very similar non-alcoholic products are sold, and where persons under the age of 21 are more likely to frequently shop, or that the sale of such product would not be conducive to proper regulation and control.

"Non-alcoholic frozen popsicles are a standard item sold in many premises licensed to sell beer and wine products for off-premises consumption. The statement that this popsicle contains alcohol is printed in small type, as is the warning not to sell to anyone under 21. However, the possibility of underage customers purchasing this product appears to be too feasible.

"The Authority determines that approval of this brand label registration would create a high degree of risk in the administration and enforcement of the Alcoholic Beverage Control Law and that public convenience and advantage would not be promoted by such approval."

It is uncontested that the SLA undertook no investigation independent of the underlying application. There is no evidence of record that the product at issue was promoted as the "only alcoholic frozen popsicle in the world" or that the marketing of the product was not "conducive to proper regulation and control."

Alcoholic Beverage Control Law § 107-a states, inter alia:

"1. The liquor authority is hereby authorized to promulgate rules and regulations governing the labeling and offering of alcoholic beverages bottled, packaged, sold or possessed for sale within this state.

"2. Such regulations shall be calculated to prohibit deception of the consumer; to afford him adequate information as to quality and identity; and to achieve national uniformity in this field in so far as possible."

It is beyond cavil that section 107-a is concerned solely with consumer deception, adequate information on labeling concerning quality and identity, and national uniformity.

In this case, the SLA failed to point to any part of the label that was deceptive or misleading. Indeed, there is no equivocation or deception on the label whatsoever as it clearly indicates in two different locations that the product contains alcohol. Absent a showing of deception, the SLA was without the authority to impose its perception of the product as encouraging underage consumption of alcohol on the bare record before it. *Intentio inservire debet legibus, non leges intentioni. (See Matter of Hawkeye Distilling Co. v New York State Liq. Auth.*, 118 Misc 2d 505, 506 [Sup Ct, NY County 1983] ["Once it appears that neither the bottle nor its label are misleading, the authority's writ runs no farther"]; *Cabo Distrib. Co., Inc. v Brady*, 821 F Supp 601, 613-615 [ND Cal 1992] [construing similar federal regulation]; *see also CIBCO Distrib. Co. v State Liq. Auth.*, NYLJ, Feb. 9, 1988, at 7, col 2 [Sup Ct, NY County].)

It is true, as the lower court noted, that the Court of Appeals in *Matter of Affiliated Distillers Brands Corp. v State Liq. Auth.* (24 NY2d 31, 36 [1969]) stated that "[t]he Authority may, undoubtedly, exercise discretion to refuse to approve a label which would help an applicant to violate any part of the Alcoholic Beverage Control Law." However, the SLA's claim that petitioner's label would help petitioner violate the sections of the Alcoholic Beverage Control Law prohibiting the sale of alcohol to persons under 21 is simply without any support in the record. On the contrary, the record is replete with precautions that petitioner will take so that retailers will not sell its product to persons under age 21.

In a case postdating *Affiliated Distillers*, the Court of Appeals stated that "[d]enial of a license on the speculation that it will

be operated in violation of law is impermissible. The likelihood of future violation can furnish a basis for denial only when there are facts in the record which rationally support doing so." (*Matter of Circus Disco v New York State Liq. Auth.*, 51 NY2d 24, 35-36 [1980] [citations omitted]; *see also Matter of Sled Hill Cafe v Hostetter*, 22 NY2d 607, 612-613 [1968] ["(w)here the Authority's conclusions are based on speculative inferences unsupported by the record its determination should be annulled"].)

A number of courts have set aside denials of applications despite the SLA's concerns about the possibility of underage alcohol consumption. For example, in one case the SLA denied petitioner's application for a restaurant liquor license because the restaurant was in close proximity to New Jersey. (*See Matter of Matty's Rest. v New York State Liq. Auth.*, 21 AD2d 818, 819 [2d Dept 1964], *affd* 15 NY2d 659 [1964].) While New York permitted the sale of alcohol to persons over the age of 18, at that time, New Jersey law did not permit the sale of alcoholic beverages to persons under the age of 21 years. The SLA surmised that underage persons from New Jersey would be attracted to the New York premises but the Court found that the SLA's actions did not have a rational basis and annulled the determination. (*Id*. at 818-819.)

In *CIBCO* (*supra*), a case remarkably similar to the instant petition in many respects, the SLA disapproved a label for "Nude Beer." The label depicted a woman wearing a bikini top, but the top could be scratched off to reveal bare breasts. (NYLJ, Feb. 9, 1988, at 7, col 2.) The SLA maintained that "the label would encourage underage drinking by appealing to a youthful market" and that "the bottle could be redeemed for refund in grocery stores where young children are present and would probably be sold largely for off-premises consumption so that the scratched-off labels would be accessible to persons of all ages." (*Id*. at col 3.) However, the court correctly ordered respondent to approve the label, stating:

> "[T]he SLA's conclusion that the proposed label would encourage underage drinking by appealing to a youthful market is wholly unsupported in the record and constitutes mere speculation . . . . Denial of brand label registration based upon speculation that the beverage will be sold in violation of state law is impermissible in the absence of facts on the record which rationally support such a conclusion." (*Id*.)

In *Bad Frog Brewery, Inc. v New York State Liq. Auth.* (134 F3d 87, 91 [2d Cir 1998]), the SLA denied Bad Frog's application for a beer label that depicted a frog "giving the finger." The SLA held that the gesture, plus the slogan, "He just don't care," enticed underage drinkers and encouraged the public to disregard the health warning on the label about the dangers of alcohol. (*Id.*) The SLA also noted that "the label could appear in grocery and convenience stores, with obvious exposure . . . to children of tender age." (*Id.*) However, the Second Circuit stated, "The truth of these propositions [that the frog appeals to youngsters and promotes underage drinking] is not so self-evident as to relieve the state of the burden of marshalling some empirical evidence to support its assumptions." (*Id.* at 100.)

Finally, in *Cabo*, the federal Bureau of Alcohol, Tobacco and Firearms (BATF) revoked certificates of label approval for "Black Death Vodka." (*Cabo Distrib. Co., Inc. v Brady*, 821 F Supp 601 [1992].) The plaintiffs argued that they were denied their rights under the Administrative Procedure Act and the Fifth Amendment. The court granted the plaintiffs summary judgment finding that the agency had acted in an arbitrary and capricious manner. The court noted that the BATF presented no consumer surveys indicating that the product is associated in any way with underage drinking. (*Id.* at 615.) The court also pointed out that the BATF had approved other death-evoking labels and stated that "[f]or the BATF to single out plaintiffs' 'Black Death' vodka . . . because it somehow . . . misleads young people into believing it is part of a death cult is inconsistent and unfair to plaintiffs." (*Id.*)

In the instant case, I believe the SLA acted in an arbitrary and capricious manner when it denied petitioner's application without any empirical evidence that the proposed label was deceptive to the general public.

ANDRIAS and SWEENY, JJ., concur with FRIEDMAN, J.; MAZZA-RELLI, J.P., and CATTERSON, J., dissent in a separate opinion by CATTERSON, J.

Judgment, Supreme Court, New York County, entered on or about December 27, 2004, affirmed, without costs.