This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-------------------------------------------------------------------

No. 59
In the Matter of Luther Dempsey,
          Appellant,
        v.
New York City Department of
Education, et al.,
          Respondents.

          Nicole E. Salk, for appellant.
          Karen M. Griffin, for respondents.
          Community Service Society of New York et al., amici
curiae.

FAHEY, J.:

        In this CPLR article 78 proceeding, we hold that the

respondent agency's denial of petitioner's application for

certification as a school bus driver was not arbitrary and

capricious.  We conclude that Matter of Acosta v New York City

Dept. of Educ. (16 NY3d 309 [2011]), on which petitioner relies,

is distinguishable.

- 1 -

I.

Petitioner Luther Dempsey applied to the New York City Department of Education (DOE) in 2006 for certification as a school bus driver.  He indicated that he had been employed for about two years by a private bus company, transporting preschool children.  On his application, petitioner disclosed that he had been convicted of crimes.  In all, he had been convicted of two drug-related felonies (criminal possession of a controlled substance in the fifth degree and attempted criminal sale of a controlled substance in the third degree) in 1990, as well as three theft-related misdemeanors, the most recent in 1993, when petitioner was 41 years old.  Petitioner explained that his criminal history was related to a past drug addiction, which he had overcome in the mid-1990s through a drug treatment program.

In July 2006, the DOE denied petitioner's application. In a letter to the bus company employing petitioner, a DOE executive stated that the reason for the denial was that petitioner had been "convicted of an offense that render[ed] [him] unsuitable to perform duties associated with the transportation of school age children."  As a result of petitioner's failure to receive certification, the bus company terminated petitioner's employment.

Petitioner and other individuals who had been denied certification by the DOE based on criminal convictions commenced a proceeding pursuant to CPLR article 78 challenging the denials.

Supreme Court dismissed the proceeding.  However, the Appellate

Division modified Supreme Court's judgment, granted the petition

to the extent of annulling the DOE's determinations, and remitted

to the DOE, "to give petitioners an opportunity to review the

information upon which DOE's determinations were based and to

submit statements and documents pursuant to Chancellor's

Regulation C-105" (Matter of Hasberry v New York City Dept. of

Educ., 78 AD3d 609 [1st Dept 2010]).  That DOE regulation

provides, in pertinent part, that

> "[i]f, prior to the conclusion of any
> background investigation, information of a
> derogatory nature is obtained which may
> result in denying the application for
> license, certification or employment, an
> applicant will be given an opportunity to
> review such information with [DOE's Office of
> Personnel Investigation] and to include in
> the investigatory file, any written
> statements or documents which refute or
> explain such information" (New York City
> Department of Education, Regulation of the
> Chancellor C-105 § 2, at 4).

Petitioner then submitted various documents to the DOE.

He sent several letters from representatives of bus companies for

which he had worked, including his most recent employer, as well

as a letter from a manager at a facility where he had worked as a

security officer; all of the letters described him as a reliable

and responsible employee.  He also submitted a certificate of

relief from disabilities with respect to his felonies, which had

been issued by Supreme Court in 2002.

In March 2011, after interviewing petitioner, the DOE

again denied his application.  Petitioner sought a "[w]ritten statement upon denial of license or employment," pursuant to Correction Law § 754.  The Executive Director of the DOE's Office of Pupil Transportation (OPT), in a May 4, 2011 letter setting forth the reasons for the denial, explained that petitioner was "unsuitable for [DOE] certification of approval for school bus service and the resultant close supervision of school children in the relative [sic] unsupervised environment of a school bus," in light of certain factors, including "the bearing that the particular criminal offense(s) for which the person was previously convicted will have on his/her fitness and/or ability to perform school bus duties and responsibilities safely and reliably," "the mature age of the person at the time of some of the offenses," "the seriousness of the particular offense(s)," and "the interests and direct role of the [DOE] to protect the safety and welfare of school children, parents and school employees."

II.

Petitioner commenced this CPLR article 78 proceeding against the DOE and its Chancellor in July 2011, contending that the DOE's determination denying his application for certification was arbitrary and capricious.  Petitioner alleged that DOE had violated Correction Law §§ 752 and 753, Executive Law § 296 (15), and New York City Administrative Code § 8-107 (10).  He sought annulment of the determination, declaratory judgment, and an

order directing the DOE to approve his application, as well as damages.

In its answer, the DOE denied petitioner's allegations, and explained its denial of petitioner's application with reference to his "very long record of criminal behavior." In an affidavit, the OPT's Executive Director detailed the reasons for the decision to deny petitioner's renewed application, including petitioner's criminal convictions, a gap in his employment history, and his age at the time of his last conviction. The Executive Director stated that he had concluded that "[p]etitioner would pose an unreasonable risk to the safety and welfare of the young children with whom he would come into contact." For his part, the DOE executive who had denied petitioner's original application stated in an affidavit that it had been "of great concern" to him that petitioner had committed the drug-related felonies and the 1993 misdemeanor "as a mature adult," explaining that while "[s]uch a serious error in judgment could possibly be excused were it the result of a youthful indiscretion," it was of greater significance that petitioner had shown "such poor judgment and control at the age of 41."[1]

Supreme Court granted the petition to the extent of

---

[1]    The DOE also submitted various exhibits, including notes from three DOE investigators who reviewed petitioner's application after he sought the reasons for its denial, in which the investigators indicated concern about a lack of community recommendations on behalf of petitioner, his arrest history, and a gap in his employment profile.

annulling DOE's determination, ordered the DOE to approve

petitioner's application, and remanded.  Supreme Court concluded

that the DOE had

> "failed to consider all eight factors as set
> forth in section 753 of the Correction Law.
> . . .  Respondent only considered
> petitioner's criminal history when reviewing
> his application and failed to consider his
> extensive evidence of rehabilitation.
> Petitioner's last conviction was eighteen
> years ago and he obtained a certificate of
> relief from disabilities" (2012 NY Slip Op
> 30552[U] [Sup Ct, NY County 2012]).

The Appellate Division reversed Supreme Court's

judgment, denied the petition, and dismissed the proceeding (108

AD3d 454 [1st Dept 2013]).  The Appellate Division held that

> "[t]he DOE's May 4, 2011 determination that
> petitioner's prior drug-related convictions
> as an adult bore on his fitness and/or
> ability to perform his school bus duties was
> rationally based, and it shows DOE gave due
> consideration to the relevant factors under
> Correction Law § 753 before denying his
> application.  Although petitioner avers he
> has been drug free since 1994, and his crimes
> were directly related to his drug addiction
> at the time, the offenses were not youthful
> indiscretions (he was 41 years old), but were
> of a serious nature since each involved
> narcotics" (id. at 456).

The Appellate Division concluded that Supreme Court had

"improperly reweighed the factors set forth in the Correction Law

and substituted its own judgment.  The nature of the criminal

conduct for which petitioner was convicted has a direct bearing

on his fitness or ability to perform one or more of the duties or

responsibilities" of a school bus driver (id. [citations

omitted]).

One Justice dissented, noting that the DOE's May 4, 2011 letter "made no reference to the time that had elapsed since the last conviction (now 20 years), petitioner's lengthy experience successfully driving school buses with the very same children or type of children he would be driving and supervising were the license granted, or the extensive evidence of complete rehabilitation that petitioner furnished" (108 AD3d at 460 [Freedman, J., dissenting]).  The dissenting Justice would have held that DOE's determination was arbitrary and capricious.

The Appellate Division granted petitioner leave to appeal to this Court, certifying the question whether its order was properly made.  We now affirm.

### III.

Article 23-A of the Correction Law protects persons who seek employment, after having been convicted of one or more criminal offenses, from unfair discrimination.  It is impermissible for a public agency or private employer to deny a license or employment application "by reason of the individual's having been previously convicted of one or more criminal offenses" (Correction Law § 752), unless one of two exceptions applies.  An application for a license or employment may be denied on the ground of past criminal history if "(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by

the individual; or (2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public" (Correction Law § 752).[2]

The Correction Law sets out eight factors that a public agency or private employer must consider when deciding whether one of the § 752 exceptions applies:

> "(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
>
> (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
>
> (c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his [or her] fitness or ability to perform one or more such duties or responsibilities.
>
> (d) The time which has elapsed since the occurrence of the criminal offense or offenses.
>
> (e) The age of the person at the time of occurrence of the criminal offense or

---

[2] It is not clear which exception was the basis for the DOE's denial in this case. In his affidavit in support of DOE's answer, OPT's Executive Director stated his conclusion that "[p]etitioner would pose an unreasonable risk to the safety and welfare of the young children with whom he would come into contact," suggesting that the DOE invoked the second exception. The better practice is to articulate which Correction Law § 752 exception justifies an adverse employment action at the time the adverse action occurs.

offenses.

(f) The seriousness of the offense or
offenses.

(g) Any information produced by the person,
or produced on his [or her] behalf, in regard
to his [or her] rehabilitation and good
conduct.

(h) The legitimate interest of the public
agency or private employer in protecting
property, and the safety and welfare of
specific individuals or the general public."

(Correction Law § 753 [1].)

We have held that "[a] failure to take into
consideration each of these factors results in a failure to
comply with the Correction Law's mandatory directive" (Matter of
Acosta v New York City Dept. of Educ., 16 NY3d 309, 316 [2011]).

In Acosta, we reviewed the DOE's denial of an
application for a security clearance, filed by an individual who
had been convicted of first-degree robbery when she was 17 years
old.  The DOE contended that issuance of the security clearance
would pose "an unreasonable risk to property or to the safety or
welfare of specific individuals or the general public"
(Correction Law § 752 [2]).  We held that the DOE acted
arbitrarily because the agency failed to consider each of the
factors specified in Correction Law § 753.  In particular, we
concluded that the DOE did not take into consideration all of the
documentation that Acosta submitted in support of her
application, and therefore violated Correction Law § 753 (g).
The DOE had failed to consider a letter of reference from

Acosta's employer, indicating that she had been hired, in part,
on the basis of her " 'model references from past employers' "
(Acosta, 16 NY3d at 319).  DOE's review, we concluded, amounted
to no "more than a pro forma denial of petitioner's application
on the basis of her prior criminal conviction" (id. at 320).

Petitioner relies on Acosta, contending that the DOE
has, once again, failed to review anything other than an
applicant's criminal record.  We disagree.

Petitioner principally argues that the DOE "ignored the
overwhelming and undisputed evidence that [he] had safely and
successfully driven young children on school buses for 15 years
without accident."  A failure to review evidence provided by an
applicant tending to show that he or she had reliably carried out
duties similar to those contemplated in the license or employment
in question would constitute a violation of § 753 (1) (b) and
(g).  However, in this case, petitioner adduces no evidence
demonstrating that the DOE failed to consider the information he
provided concerning his relevant employment history.

In Acosta, it was "plain that, other than her personal
statement, the DOE did not consider the documentation that
petitioner submitted in support of her application" (Acosta, 16
NY3d at 319), but the same cannot be said here.  Rather, the
record indicates that the DOE may simply have given "greater
weight to . . . the fact and circumstances of [petitioner's]
conviction[s] than to . . . his subsequent accomplishments," and

in these circumstances the DOE's determination cannot be
overturned without "engaging in essentially a re-weighing of the
factors, which is beyond the power of judicial review" (Matter of
Arrocha v Board of Educ. of City of N.Y., 93 NY2d 361, 366-367
[1999]).  Moreover, the DOE is not obliged "to point to any
contemporaneously created record that demonstrates that it
considered each of the eight factors in reviewing petitioner's
application" (Acosta, 16 NY3d at 319).  Contrary to the dissent's
theory, the burden remains on petitioner to show that the denial
of his application was arbitrary and capricious.

Petitioner also relies on Correction Law § 753 (2),
which provides that, in reaching a determination under § 752,
"the public agency or private employer shall also give
consideration to a certificate of relief from disabilities or a
certificate of good conduct issued to the applicant, which
certificate shall create a presumption of rehabilitation in
regard to the offense or offenses specified therein."  Here,
petitioner received a certificate of relief from civil
disabilities, issued in 2002.

However, Correction Law § 753 (2) does not "establish a
prima facie entitlement to the license or employment.  It creates
only a presumption of rehabilitation, and although rehabilitation
is an important factor to be considered by the agency or employer
in determining whether the license or employment should be
granted (see Correction Law 753 [1] [g]), it is only 1 of 8

factors to be considered" (Matter of Bonacorsa v Van Lindt, 71 NY2d 605, 614 [1988]).  Other Correction Law 753 (1) factors, including criteria applicable here, "such as severity of the criminal offenses, the age of the offender at the time of the offenses, . . . and the nature of the license or employment sought," may justify denial of petitioner's application, "notwithstanding the absence of new evidence specifically addressed at overcoming the presumption of rehabilitation" (id.).

Notably, petitioner, who sought a certification that would authorize him to drive a school bus and have supervisory responsibility over school children in an otherwise unmonitored environment, had two felony convictions, as well as multiple misdemeanor convictions.  Moreover, as the DOE noted, at the time of his more recent offenses, he was of "mature age," rather than an age at which an individual's moral values are typically still developing.  In addition, his felony convictions were for possession and attempted sale of a controlled substance, a salient factor to the DOE, which is required by its regulations to take into account the particular concern of the New York City Public School System with offenses involving "possessing, distributing or selling controlled substances" (New York City Department of Education, Regulation of the Chancellor C-105 § 4, at 5).  In these circumstances, we cannot conclude that the DOE's determination, declining to grant the certification despite the certificate of relief from disabilities, was arbitrary and

capricious.

Petitioner's remaining contentions do not afford a basis for relief.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question not answered as unnecessary.

Matter of Dempsey v NYC Department of Education

No. 59

LIPPMAN, Chief Judge (dissenting):

The majority overlooks the policy animating Correction Law Article 23-A -- that people who have been convicted of crimes can be rehabilitated and that employment is critical in that effort. The entire purpose of the eight factors under Correction Law section 753 (1) is to ensure that employers act in furtherance of this policy and assist the reintegration of rehabilitated individuals into society. Because I believe the record makes it evident that the DOE failed to consider all eight factors, I would hold that its determination was arbitrary and capricious.

In enacting Article 23-A, the Legislature intended to recognize job-seeking individuals exactly like petitioner who, having engaged in past criminal activity, decide to lead a law-abiding life. It is clear that petitioner, now 62 years old, has presented overwhelming evidence of his rehabilitation and his move beyond criminal activity. He has been drug-free for 20 years, and continues to serve as an active member of the Bowery Mission Transitional Center. At the time that his application was reviewed, 18 years had passed since his last conviction and

- 1 -

he had been working as a school bus driver for 15 years.  He

submitted to the DOE numerous references from friends, a

minister, and employers who described his excellent relationships

with the children, parents and schools he encountered as a bus

driver.  His employer described him as "upstanding," "very

dependable" and "a great asset to the company."  Despite all of

this, and the Appellate Division's remand for reconsideration due

to the DOE's initial error (Matter of Hasberry v NYC Dept. of

Educ., 78 AD3d 609 [1st Dept 2010]), the DOE denied petitioner's

application by terse letter dated March 17, 2011 ("The New York

City Department of Education's Office of Pupil Transportation

(OPT) has reevaluated your application for the position of school

bus driver/escort.  It is the opinion of the OPT that its

original findings are correct and your application has been

denied").  Then upon petitioner's request under § 754 of the

Correction Law, the DOE sent him another letter which found that

his application must be denied because of the "direct

relationship" between his criminal past and the job for which he

seeks certification.

       In fact, the DOE's May 4, 2011 letter ignores the

extensive evidence of rehabilitation submitted and the fact that

petitioner had been doing essentially the same job as that for

which the license was sought. In it, the Executive Director of

the DOE states:

      "The nature of the criminal offenses committed by the
      applicant lead me to have grave doubt about his moral

character and reliability.  Moreover, it appears to OPT
that the applicant failed to be completely truthful in
his application for NYCDOE certification of approval.
As a consequence of the foregoing certification of
approval for NYCDOE school bus service is hereby
denied."

As Justice Freedman stated:

"The letter's reference to [petitioner's] 'untruthfulness'
is totally unsupported by any evidence . . . [and] [t]he
conclusion reached by the Executive Director of OPT that he
had 'grave doubt about his [petitioner's] moral character
and reliability' is belied by petitioner's impeccable record
of steady employment since 1994, and his employment as a
school bus driver for public and private school pupils for
12 years without incident, his certificate of relief from
disabilities, and his significant record of community
service"

(Dempsey, 108 AD3d 454, 460 [1st Dept 2013] [Freedman, J.

dissenting]).

        Also very significant is the content of petitioner's

15-minute interview by OPT personnel in February 2011, which

shows what the DOE actually considered.  During the interview,

OPT investigators asked petitioner questions about where he used

to sell drugs, the quantity of the drugs sold and how much he

spent on his daily "habit."  Yet, they failed to ask questions

about petitioner's life in the 18 years since his last conviction

in 1993.  In fact, OPT asked no questions about petitioner's

recovery from addiction or about the documents he presented

regarding his rehabilitation.

        In Matter of Acosta v NYC Dept. of Educ. (16 NY3d 309,

315-316 [2011]), we specified that "'[i]n making a determination'

as to whether either the 'direct relationship' exception or the

'unreasonable risk' exception applies," "[a] failure to take into consideration each of these factors results in a failure to comply with the Correction Law's mandatory directive"(citing Matter of Arrocha v Board of Educ. of City of N.Y., 93 NY2d 361, 364 [1999]).  While the majority is correct that it is improper for courts to "engag[e] in essentially a re-weighing" of the section 753 (1) factors (Arrocha, 93 NY2d at 367), it is clear that the DOE simply failed to consider petitioner's rehabilitation and work experience in making its determination.

The majority cites Acosta (16 NY3d at 319) for the proposition that "the DOE is not obliged 'to point to any contemporaneously created record that demonstrates that it considered each of the eight factors in reviewing petitioner's application.'"  However, the majority fails to note that unlike here, the petitioner in Acosta did not make a section 754 request for an explanation of the DOE's denial of her application.  In fact, in that same paragraph in Acosta, we cited Correction Law section 754, distinguishing those letters from agency responses explaining such denials upon a petitioner's request (16 NY3d at 319 ["but see Correction Law § 754 (providing that, if requested, a public agency or private employer that denies a person's application for a license or employment on the basis of that person's prior criminal conviction 'shall provide, within thirty days of a request, a written statement setting forth the reasons for such denial'")]).  This is the second time in less than five

years that a DOE hiring case like this has come before us and this is the second time the DOE considered this petitioner's application. Yet, in each of these circumstances, the DOE's response has been to completely avoid any mention of the petitioner's rehabilitation after the petitioner's section 754 request for an explanation as to why the application was denied. This is unacceptable.

"Although the Court cannot substitute its judgment for that of the agency, it has a duty to insure that the law is properly applied and that the decision is not based upon 'speculative inferences unsupported by the record'" (Matter of El v NYC Dept. of Educ., 23 Misc 3d 1121(A), at *6 [Sup Ct New York Co 2009], quoting Matter of Sled Hill Café v Hostetter, 22 NY2d 607, 612-613 [1968]).

> "[The] denial letter is particularly problematic here in that petitioner's criminal history is the only evidence detailed in any meaningful respect. Thus the decision as a whole, as drafted, suggests that it was based primarily, if not entirely, on petitioner's criminal history, with little consideration of the other evidence and statutory factors"

(id.).

Additionally, the majority states that "petitioner adduces no evidence demonstrating that the DOE failed to consider the information he provided concerning his relevant employment history" (majority op at 10). While I do not suggest that we can order the DOE to grant petitioner's application, the majority wrongly places the burden on petitioner to show that the DOE

failed to consider each of the eight factors.  Rather, the burden is on the DOE to show that petitioner's conviction warrants a denial in this case.

The majority continues: "the record indicates that the DOE may simply have given 'greater weight to . . . the fact and circumstances of [petitioner's] conviction[s] than to . . . his subsequent accomplishments" (id.).  Contrary to the majority's suggestion, I do not propose a re-weighing of the factors here -- the problem is not that the DOE did not give *enough* weight to petitioner's rehabilitation, but that it did not consider it *at all*.

Furthermore, implicit in its determination is that the DOE has created a bright line rule that *anyone* with an adult drug felony conviction, no matter the circumstances, is unfit to be a school bus driver.  However, the Legislature has already addressed the issue of prior convictions, and decided exactly which criminal convictions bar one from becoming a school bus driver in New York (see VTL §§ 509-cc 4[a], 4[b]).  Those convicted of violent and sexual offenses are prohibited from being school bus drivers, but not those convicted of drug offenses.  The DOE has essentially created a permanent disqualification to employment where none exists under New York law.  This analysis is particularly troubling where, as here, the convictions occurred more than 20 years before petitioner was granted a Certificate of Relief from Disabilities -- which

specifically removes any barriers to driving a school bus -- and has in fact driven a school bus in an exemplary manner for over 15 years. While the age of the individual at the time the crime was committed is a factor that may be considered, 20 years of rehabilitation would seem dispositive by any standard. "Petitioner's age [at the time of the crime] 'will never change - and if determinative, would bar Petitioner forever,' and undermine the purpose of Article 23-A of the Correction Law" (Matter of Soto v New York State Off. of Mental Retardation & Dev. Disabilities, 26 Misc 3d 1215(A), at *7 [Sup Ct Kings Co 2010], quoting Camulaire v NYC Bd. of Educ., NYLJ, September 1998, at 22, col 1 [Sup Ct New York Co]).

Among criminologists, the main factors that predict whether a previous offender will cease criminal activity and reintegrate into society are the passage of time and employment. These factors are consistent across types of crime and the individual's age when the crime occurred. "At all ages and potential turning points, those who fail to secure satisfying employment or create bonds with conventional others often return to their former lifestyles and the risk of criminal involvement that brings" (Neal Shover, Great Pretenders: Pursuits and Careers of Persistent Thieves, at 129 [1996]). Accordingly, in passing Article 23-A, the Legislature realized that unemployment is the greatest barrier to rehabilitation.

> "Observers of our criminal justice system agree that
> the key to reducing crime is a reduction in recidivism

(i.e. repeated criminal conduct by the same individuals). The great expense and time involved in successfully prosecuting and incarcerating the criminal offender is largely wasted if upon the individual's return to society his willingness to assume a law-abiding and productive role is frustrated by senseless discrimination. Providing a former offender a fair opportunity for a job is a matter of basic human fairness, as well as one of the surest ways to reduce crime"

(Mem in Support, Bill Jacket, ch. 931, L. 1976). "This bill represents a major advance in public policy; its vigorous enforcement can remove the second-class status to which former offenders have been relegated regardless of their efforts to be law-abiding citizens" (id.). The actions of the DOE here represent the type of senseless discrimination Article 23-A was enacted to prevent, and petitioner is one of the class of intended beneficiaries of this statute.

For these reasons, I would reverse the order of the Appellate Division and remand to the agency for further proceedings.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, with costs, and certified question not answered as unnecessary. Opinion by Judge Fahey. Judges Read, Pigott, Abdus-Salaam and Stein concur. Chief Judge Lippman dissents in an opinion in which Judge Rivera concurs.

Decided May 12, 2015