[946 NE2d 731, 921 NYS2d 633]

In the Matter of MADELINE ACOSTA, Respondent, v NEW YORK CITY DEPARTMENT OF EDUCATION et al., Appellants.

Argued February 9, 2011; decided March 24, 2011

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Jane L. Gordon* and *Edward F.X. Hart* of counsel), for New York City Department of Education and others, appellants. I. As the Supreme Court and the Appellate Division dissent correctly determined, the decision to deny Madeline Acosta's application for security clearance was neither arbitrary nor capricious nor an abuse of administrative discretion. (*Matter of Arrocha v Board of Educ. of City of N.Y.*, 93 NY2d 361; *Matter of Boatman v New York State Dept. of Educ.*, 72 AD3d 1467; *Matter of Peckham v Calogero*, 12 NY3d 424; *Matter of Bonacorsa v Van Lindt*, 71 NY2d 605; *Matter of Malverty v Waterfront Commn. of N.Y. Harbor*, 133 AD2d 558, 71 NY2d 977; *Soto-Lopez v New York City Civ. Serv. Commn.*, 713 F Supp 677; *Schultz v Waterfront Commn. of N.Y. Harbor*, 35 AD2d 373; *Matter of Polednak v Levitt*, 167 AD2d 274, 78 NY2d 852; *Matter of Sinker [Sweeney]*, 89

NY2d 485.) II. Even if the Appellate Division majority was correct, Madeline Acosta's only remedy should be the annulment of the New York City Department of Education's determination. (*Matter of Formica Constr. Inc. v Mintz,* 65 AD3d 686; *Matter of Gallo v State of N.Y., Off. of Mental Retardation & Dev. Disabilities,* 37 AD3d 984; *Matter of Meth v Manhattan & Bronx Surface Tr. Operating Auth.,* 134 AD2d 431; *Matter of Marra v City of White Plains,* 96 AD2d 17; *Matter of El v New York City Dept. of Educ.,* 23 Misc 3d 1121[A], 2009 NY Slip Op 50883[U]; *Black v New York State Off. of Mental Retardation & Dev. Disabilities,* 20 Misc 3d 581.)

*Kaufman, Dolowich, Voluck & Gonzo, LLP,* Woodbury (*Matthew J. Minero* of counsel), for Cooke Center for Learning and Development, appellant. I. The undisputed facts establish no basis for any independent claim against Cooke Center for Learning and Development for terminating respondent's employment. (*Maas v Cornell Univ.,* 94 NY2d 87; *Ozdemir v Caithness Corp.,* 285 AD2d 961; *Leon v Martinez,* 84 NY2d 83; *Biondi v Beekman Hill House Apt. Corp.,* 257 AD2d 76; *Silvester v Time Warner,* 1 Misc 3d 250; *Matter of Goldstein v Lewis,* 90 AD2d 748, 59 NY2d 706; *Matter of Campo Corp. v Feinberg,* 279 App Div 302, 303 NY 995; *Matter of Laverack & Haines v New York State Div. of Human Rights,* 88 NY2d 734; *Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd.,* 59 NY2d 69; *Matter of Balban v State Div. of Human Rights,* 104 AD2d 709.) II. Respondent is not entitled to reinstatement or monetary relief from Cooke Center for Learning and Development under any circumstances. (*Matter of Gallo v State of N.Y., Off. of Mental Retardation & Dev. Disabilities,* 37 AD3d 984; *Black v New York State Off. of Mental Retardation & Dev. Disabilities,* 20 Misc 3d 581.)

*MFY Legal Services, Inc.,* New York City (*Carolyn E. Coffey, Christopher Lamb* and *Andrew Goldberg* of counsel), for respondent. I. The Appellate Division decision should be affirmed because the New York City Department of Education's determination was without sound basis in reason and was made without regard to the facts. (*Matter of Arrocha v Board of Educ. of City of N.Y.,* 93 NY2d 361; *Matter of Boatman v New York State Dept. of Educ.,* 72 AD3d 1467; *Matter of Gallo v State of N.Y., Off. of Mental Retardation & Dev. Disabilities,* 37 AD3d 984; *Matter of Bonacorsa v Van Lindt,* 71 NY2d 605; *Matter of El v New York City Dept. of Educ.,* 23 Misc 3d 1121[A], 2009 NY Slip Op 50883[U]; *Matter of Pell v Board of Educ. of Union Free School*

*Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Sled Hill Cafe v Hostetter*, 22 NY2d 607; *Matter of Marra v City of White Plains*, 96 AD2d 17; *Matter of Cantor v New York State Racing & Wagering Bd.*, 73 AD2d 544.) II. The Appellate Division's decision should be affirmed because the New York City Department of Education's determination was infected by errors of law. (*Leatherman v Tarrant County Narcotics Intelligence & Coordination Unit*, 507 US 163; *Matter of Marra v City of White Plains*, 96 AD2d 17; *Black v New York State Off. of Mental Retardation & Dev. Disabilities*, 20 Misc 3d 581.) III. The Court should disregard the New York City Department of Education's attacks on Ms. Acosta's credibility and its improper references to confidential settlement negotiations. (*Matter of Featherstone v Franco*, 95 NY2d 550.) IV. Under CPLR 7806, the Appellate Division is authorized to remand this proceeding to the Supreme Court to fashion appropriate relief. (*Matter of Police Benevolent Assn. of N.Y. State Troopers v Vacco*, 253 AD2d 920; *Matter of Hartje v Coughlin*, 70 NY2d 866; *England v Sanford*, 78 NY2d 928.) V. The Court should not decide questions raised by Cooke Center for Learning and Development that were not certified by the Appellate Division. (*Patrician Plastic Corp. v Bernadel Realty Corp.*, 25 NY2d 599; *Gise v Brooklyn Socy. for Prevention of Cruelty to Children*, 262 NY 114; *Telaro v Telaro*, 25 NY2d 433.)

*Juan Cartagena, General Counsel, Community Service Society*, New York City (*Paul Keefe* of counsel), and *Judith M. Whiting* for Community Service Society and others, amici curiae. I. The New York City Department of Education's decision was arbitrary and capricious because the agency ignored favorable information it was legally required to consider under Correction Law article 23-A. (*Matter of Bonacorsa v Van Lindt*, 71 NY2d 605; *Matter of El v New York City Dept. of Educ.*, 23 Misc 3d 1121[A], 2009 NY Slip Op 50883[U]; *Matter of Arrocha v Board of Educ. of City of N.Y.*, 93 NY2d 361.) II. The First Department's finding that Ms. Acosta posed no risk to persons or property is supported by case law, public policy and sociological research. (*Matter of City of New York v City Civ. Serv. Commn.*, 141 Misc 2d 276; *Ford v Gildin*, 200 AD2d 224; *Matter of Burnham v State of N.Y. Ins. Dept.*, 63 AD2d 627; *Matter of Marra v City of White Plains*, 96 AD2d 17; *Matter of Sled Hill Cafe v Hostetter*, 22 NY2d 607; *Matter of Circus Disco v New York State Liq. Auth.*, 51 NY2d 24; *Matter of G. J. & S. Pizza v McLaughlin*, 78 AD2d 653; *Matter of Cojer Rest. v New York State Liq. Auth.*, 47

AD2d 612; *Matter of Hayes v New York State Liq. Auth.*, 39 AD2d 482; *Matter of Arrocha v Board of Educ. of City of N.Y.*, 93 NY2d 361.)

*Davis Polk & Wardwell LLP*, New York City (*Nancy B. Lud- merer, Christopher Lynch, Justin Sommers* and *Steven N. Feld- man* of counsel), for New York City Bar Association, amicus cu- riae. I. This Court has set out standards governing both administrative decisions generally and Correction Law article 23-A determinations in particular. (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Peck- ham v Calogero*, 12 NY3d 424; *Matter of Farina v State Liq. Auth.*, 20 NY2d 484; *Matter of Sled Hill Cafe v Hostetter*, 22 NY2d 607; *Matter of King v New York State Div. of Parole*, 83 NY2d 788; *Matter of Perpente v Moss*, 293 NY 325; *Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ.' Servs.*, 77 NY2d 753; *Matter of Central NY Coach Lines v Larocca*, 120 AD2d 149; *Matter of Scudder v O'Connell*, 272 App Div 251; *Matter of Formica Constr. Inc. v Mintz*, 65 AD3d 686.) II. By dispensing with Correction Law article 23-A's requirements, the New York City Department of Education's denial of respondent's security clearance was arbitrary and capricious. (*Matter of Mary M. v Clark*, 118 Misc 2d 98; *Matter of Rodriguez v Ward*, 64 AD2d 792; *Matter of Natural Resources Defense Council v New York City Dept. of Sanitation*, 83 NY2d 215; *Galapo v City of New York*, 95 NY2d 568; *Black v New York State Off. of Mental Retardation & Dev. Disabilities*, 20 Misc 3d 581; *Matter of King v New York State Div. of Parole*, 83 NY2d 788.) III. In light of the conduct of the New York City Department of Education and other agencies in this and other cases, this Court should clarify agency obligations under Correction Law article 23-A. (*Matter of Arrocha v Board of Educ. of City of N.Y.*, 93 NY2d 361; *Matter of Bonacorsa v Van Lindt*, 71 NY2d 605; *Matter of Formica Con- str. Inc. v Mintz*, 65 AD3d 686; *Matter of Gallo v State of N.Y., Off. of Mental Retardation & Dev. Disabilities*, 37 AD3d 984; *Matter of Davis-Elliott v New York City Dept. of Educ.*, 31 AD3d 266; *Matter of El v New York City Dept. of Educ.*, 23 Misc 3d 1121[A], 2009 NY Slip Op 50883[U].)

*Kelley Drye & Warren LLP*, New York City (*Robert E. Crotty* and *Marie E. Choi* of counsel), for Senator Bill Perkins and oth- ers, amici curiae. The New York City Department of Education's denial of Ms. Acosta's application for employment violated the public policy of the State of New York and the plain language of

the statute which states that the public policy of the State of New York is to "encourage the licensure and employment of persons previously convicted of one or more criminal offenses" (Correction Law § 753 [1] [a]). (*Carney v Philippone*, 1 NY3d 333; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653.) II. The New York City Department of Education's denial ignores the legislative history of Correction Law article 23-A, which clearly demonstrates that the Legislature intended to protect individuals such as Ms. Acosta from precisely the type of discrimination in which appellants engaged. (*Riley v County of Broome*, 95 NY2d 455; *Rankin v Shanker*, 23 NY2d 111; *People v Finnegan*, 85 NY2d 53; *People v Mower*, 97 NY2d 239; *Matter of Scotto v Dinkins*, 85 NY2d 209; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of Albano v Kirby*, 36 NY2d 526.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

We conclude that the New York City Department of Education (DOE) failed to comply with the requirements of the Correction Law and thus acted arbitrarily in denying petitioner's application for security clearance.

## I.

As a general matter, it is unlawful in this state for any public or private employer to deny any license or employment application "by reason of the individual's having been previously convicted of one or more criminal offenses" (Correction Law § 752; *see* Executive Law § 296 [15]). This general bar was enacted to further certain goals that the Legislature has identified as among the "general purposes" of the Penal Law, namely, "the rehabilitation of those convicted" and "the promotion of their successful and productive reentry and reintegration into society" (Penal Law § 1.05 [6]). As Governor Hugh L. Carey's memorandum approving the legislation that codified this general prohibition noted, "the key to reducing crime is a reduction in recidivism," and "[t]he great expense and time involved in successfully prosecuting and incarcerating the criminal offender is largely wasted if upon the individual's return to society his willingness to assume a law-abiding and productive role is frustrated by senseless discrimination" (Governor's Approval

Mem, Bill Jacket, L 1976, ch 931, 1976 McKinney's Session Laws of NY, at 2459 ["Providing a former offender a fair opportunity for a job is a matter of basic human fairness, as well as one of the surest ways to reduce crime"]).

There are, however, two significant exceptions to this general prohibition. The first exception arises where "there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual" (Correction Law § 752 [1]). The Legislature has clarified that a " '[d]irect relationship' means that the nature of criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the license, opportunity, or job in question" (Correction Law § 750 [3]). This "direct relationship" exception is not at issue on this appeal.

It is the Correction Law's second exception to the general rule barring the adverse treatment of an application for a license or employment based on an applicant's prior criminal conviction that concerns us here. The second exception allows for the adverse treatment of such applications where "the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public" (Correction Law § 752 [2]). We have previously noted that the Legislature has not provided a statutory definition of the phrase "unreasonable risk" in this context "for the obvious reason that a finding of unreasonable risk depends upon a subjective analysis of a variety of considerations relating to the nature of the license or employment sought and the prior misconduct" (*Matter of Bonacorsa v Van Lindt*, 71 NY2d 605, 612 [1988]).

Although the "unreasonable risk" analysis under the second exception is a subjective one, section 753 (1) of the Correction Law provides that, "[i]n making a determination" as to whether either the "direct relationship" exception or the "unreasonable risk" exception applies, "the public agency or private employer shall consider" the following eight factors:

> "(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

"(b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

"(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

"(d) The time which has elapsed since the occurrence of the criminal offense or offenses.

"(e) The age of the person at the time of occurrence of the criminal offense or offenses.

"(f) The seriousness of the offense or offenses.

"(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

"(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public."

A failure to take into consideration each of these factors results in a failure to comply with the Correction Law's mandatory directive (*see Matter of Arrocha v Board of Educ. of City of N.Y.*, 93 NY2d 361, 364 [1999] ["the Board *must* consider" (emphasis added) the Correction Law § 753 (1) factors]).

## II.

When petitioner was 17 years old, she was convicted of the serious crime of first degree robbery. After serving over three years in prison she was granted parole in December 1996. The record reflects that, since then, she has become a productive and law-abiding member of society. She earned a Bachelor's degree in 2001 from the City University of New York (CUNY), and, while working and attending classes at CUNY, volunteered with an organization that provides assistance to inmates in developing skills that will help them reintegrate into society upon being released. After earning her college degree, in addition to starting a family, she worked in positions of responsibility at two law firms.

Desiring employment that would allow her to spend more time with her family, in 2006 petitioner left her law firm position and took a part-time position at the Cooke Center for

Learning and Development (the Cooke Center). The Cooke Center is a not-for-profit private corporation that provides, among other things, preschool special education services in New York City through a contract with the DOE. The record reflects that petitioner worked four days per week and was engaged primarily in clerical activities with no responsibility for providing any instruction to the Cooke Center's preschool students.

In August 2006, three months after she started working for the Cooke Center, petitioner's supervisor asked her to be fingerprinted for DOE security clearance purposes (she had previously disclosed her 1993 conviction to the Cooke Center). The DOE subsequently notified petitioner that, in light of her prior criminal conviction, she would be interviewed at the DOE's offices on September 28, 2006. At the bottom of the notice petitioner received, in underlined and bold typeface, she was advised that she could "submit a written personal statement explaining the events and circumstances surrounding your conviction(s) record," and, "[i]n addition, you may also submit the following: current employment verification (on company letterhead) verifying title/dates of service, references from friends/neighbors/church and any achievements you have made either before or after your conviction(s)."

At the interview with the DOE's investigator, petitioner provided the DOE with two letters of reference from the Cooke Center. She also provided a number of other documents evidencing her education, rehabilitation and volunteer work over the 13 years since her conviction, including her diploma, various certificates of achievement, and various letters of appreciation. Of particular relevance on this appeal, one of the letters of reference from the Cooke Center specified that petitioner was hired, in part, on the basis of "her model references from past employers and colleagues."

At the September 28, 2006 interview, petitioner was advised that three people at the DOE would be reviewing her file, but the investigator she was meeting with that day would be the only one meeting with her in person. He stated that the two other reviewers "do not have time to review the stack of documents" petitioner submitted because "they have numerous other files to look at"; thus, he suggested she revise her "personal statement to include more information summarizing the documents" she submitted "since they will not be looking at all the documents," only her personal statement. The interviewer asked no questions concerning the details

surrounding her conviction, no questions concerning her former employment at the two law firms, and no questions concerning her job duties at the Cooke Center. Petitioner states that "[t]he whole interview lasted no more than five minutes." The record contains an affidavit from the investigator who interviewed petitioner, but the only aspect of her description of the interview that he specifically challenges is its length, estimating, in part on the basis of the relevant sign-in sheet, that he met with petitioner for approximately 30 minutes.

By letter dated October 12, 2006, the DOE notified petitioner that her application was denied. The DOE's letter acknowledged that New York law generally prohibits the denial of employment on the basis of prior criminal convictions, but then referenced the "unreasonable risk" exception to that general prohibition. The letter explained that petitioner's "application is denied due to the serious nature of your convictions" because, "[i]n light of these convictions, granting employment will pose an unreasonable risk to the safety and welfare of the school community." The Cooke Center subsequently terminated petitioner's employment because, as petitioner acknowledges on this appeal, the Cooke Center's contractual relationship with the DOE necessitated her termination in the event the DOE denied her application for security clearance.

This petition against the DOE and the Cooke Center, among others, followed. Supreme Court dismissed the petition. The Appellate Division, with two Justices dissenting, reversed, concluded that the DOE acted arbitrarily in denying petitioner's application, granted the petition and remanded the matter to Supreme Court to fashion an appropriate remedy (62 AD3d 455 [1st Dept 2009]). The Appellate Division subsequently certified a question to this Court concerning the propriety of its order. We agree with the Appellate Division that the DOE acted arbitrarily in this matter.

### III.

It is, of course, improper for courts to "engag[e] in essentially a re-weighing" of the Correction Law § 753 factors (*Arrocha*, 93 NY2d at 367), but, on this record, it is plain that the DOE failed to consider all of the factors in making its determination as to whether the "unreasonable risk" exception applied to petitioner's application, rendering its denial of that application arbitrary and capricious.

We first note that this conclusion is not mandated by the fact that the DOE did not state with specificity its detailed analysis

with respect to each of the eight factors in its denial letter to petitioner, as it was not required to do so in the letter notifying her of its decision (*but see* Correction Law § 754 [providing that, if requested, a public agency or private employer that denies a person's application for a license or employment on the basis of that person's prior criminal conviction "shall provide, within thirty days of a request, a written statement setting forth the reasons for such denial"]). Nor does the DOE's apparent inability to point to any contemporaneously created record that demonstrates that it considered each of the eight factors in reviewing petitioner's application necessarily require a finding that the DOE acted arbitrarily, though, of course, such documentation, if it existed, might tend to show that the DOE had fulfilled its obligation under the Correction Law.

Rather, on this record, the DOE's own statements demonstrate that it failed to comply with the statute and acted in an arbitrary manner. An affidavit from the DOE's Director for Employee Relations for the Division of Human Resources, prepared by the DOE in connection with this proceeding, provides "considerations and observations" relevant to the DOE's decision to deny petitioner's application. Among the considerations listed in this affidavit is that petitioner "did not provide references from any previous employers." However, the interview notice petitioner received from the DOE did not state that she should provide references from previous employers, and her interviewer did not ask her to provide those references. Moreover, one of the Cooke Center references that she did provide to the DOE mentioned the "model references from past employers" that the Cooke Center had reviewed and relied upon in hiring her. Thus, had the DOE reviewed this reference letter, it would have known that the letters from past employers it now says were missing were not only available but were highly favorable to petitioner.

This illuminates a larger, more serious issue regarding the DOE's consideration of petitioner's application. The Correction Law requires the DOE to "consider" "[a]ny information produced by the person, or produced on his [or her] behalf, in regard to his [or her] rehabilitation and good conduct" in determining whether the "unreasonable risk" exception applies to an application (Correction Law § 753 [1] [g]). Yet, on this record, it is plain that, other than her personal statement, the DOE did not consider the documentation that petitioner submitted in support of her application.

The arbitrary nature of the DOE's action here becomes even more evident given the "general policy" the DOE Director's affidavit states that the DOE follows with respect to first-time applicants. The Director's affidavit notes that this application was petitioner's "first application for security clearance from the DOE," and, as a matter of "general policy, the DOE takes a closer review of first-time applicants with criminal histories who have not worked with children in order to emphasize to the applicant that the DOE takes the safety and welfare of its students very seriously." We have no doubt that the DOE takes the safety and welfare of the entire school community very seriously, and its efforts in that regard are laudable. However, in light of the DOE's failure to comply with the statutorily mandated minimum requirement of reviewing all of the documentation petitioner submitted (*see e.g.* Correction Law § 753 [1] [g]), it is difficult to conclude on this record that the "closer review" purportedly applied here amounted to anything more than a pro forma denial of petitioner's application on the basis of her prior criminal conviction. Such a denial, without consideration of each of the Correction Law § 753 factors, is precisely what the statute prohibits.

The Legislature has determined that, as a general rule, it is unlawful for a public or private employer to deny an application for a license or employment on the ground that the applicant was previously convicted of a crime. This general prohibition advances the rehabilitation and reintegration goals of the Penal Law. Furthermore, barring discrimination against those who have paid their debt to society and facilitating their efforts to obtain gainful employment benefits the community as a whole. The "direct relationship" exception and the "unreasonable risk" exception to this general rule may be resorted to only upon a consideration of each of the eight factors enumerated in Correction Law § 753 (*see Arrocha,* 93 NY2d at 364).

### IV.

Finally, we note that petitioner does not dispute that, in light of the Cooke Center's contract with the DOE, the DOE's denial of petitioner's application for security clearance obligated the Cooke Center to terminate her employment. The Cooke Center's motion to dismiss the petition as against it, therefore, should have been granted.

Accordingly, the order of the Appellate Division should be modified, without costs, by granting the motion of Cooke Center

for Learning and Development to dismiss the petition against it, and, as so modified, affirmed. The certified question should be answered in the negative.

SMITH, J. (dissenting). It is easy to sympathize with this petitioner, and to be dismayed by the decision of the Department of Education (DOE) to deny her security clearance. From what we know, petitioner's achievement in overcoming her very troubled youth is impressive, and could be inspiring to others. But I would not give in to the temptation to second-guess the DOE, which has the duty to protect not only the public's money and property, but also the children committed to its charge.

The question for the DOE—not the courts—to decide was whether granting petitioner a security clearance "would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public" (Correction Law § 752 [2]). Considering the interests at stake, the DOE could reasonably believe that anything more than a very small risk would be "unreasonable," and that there might be more than a very small risk here. In 1993, petitioner was arrested on two separate occasions, and charged with crimes including two first degree robberies involving the use or threatened immediate use of a dangerous instrument (Penal Law § 160.15 [3]). She pleaded guilty and received a sentence of 4 to 12 years. She was paroled in 1997 and discharged from parole in 2000. These events were history, but not ancient history, when she applied for a security clearance in 2006. The DOE could have reasonably wanted to know more about them.

Petitioner chose to tell them very little. Invited to "submit a written personal statement explaining the events and circumstances surrounding your conviction(s) record," she responded, and later expanded her response. This is all that her expanded statement says about the crimes:

> "I was 17 years old at the time of my incarceration. Before my incarceration I attended school full time. I was a senior at John Jay High School when I became involved in an abusive relationship. He was physically abusive and he forced me to participate in the robberies he wanted to commit and at the time I thought for my own safety I would go along with it. We were not arrested committing a crime. I was on my way home from school when I attempted to board the train with train pass that had someone

else's name on it. The officer at the station requested for me to produce identification to match the train pass. I didn't have identification. The officer ran a check on the name and found out it was reported stolen. We were both arrested. I soon severed all ties with him. I take responsibility for my part and honestly feel remorseful for allowing for those things to happen in my presence. I was sentenced to 4-12 years. He was sentenced to 6-18 years because he was accused of having a weapon."

Among the facts petitioner did not disclose is how many robberies there were; what weapon was used; what was done to intimidate the victims; and what petitioner did to help. Reading petitioner's statement, one cannot learn why a judge thought that she deserved a 4-to-12-year sentence. I can hardly blame petitioner for not wanting to dwell on these very unpleasant details; but I also cannot blame the DOE for deciding that it should not give petitioner clearance without knowing more than it did.

It seems to me that, despite its disclaimer, the majority has done what it acknowledges courts should not do: It has reweighed the relevant factors, and decided that it disagrees with the DOE's evaluation of them. The majority quibbles with the DOE over a minor point—whether the absence of references from previous employers is significant, where petitioner was apparently able to provide such references at an earlier time (majority op at 319). Stretching to find a "larger, more serious issue," the majority asserts that the DOE's procedure was flawed because it failed to "consider the documentation that petitioner submitted in support of her application" (majority op at 319). I find it extremely hard to believe that either the DOE's decision or the majority's here would be different if a DOE employee had turned over every page of the considerable stack of certificates of recognition that petitioner submitted.

It seems obvious that the majority's real difference with the DOE is substantive, and not procedural—the majority thinks the DOE made a mistake. Perhaps it did, but it did not act so arbitrarily that we are justified in annulling its ruling.

Judges CIPARICK, GRAFFEO, PIGOTT and JONES concur with Chief Judge LIPPMAN; Judge SMITH dissents and votes to reverse in a separate opinion in which Judge READ concurs.

Order modified, etc.