OPINION OF THE COURT
Peter H. Moulton, J.
This case is about the second chances afforded by Correction Law § 752. Petitioner brings this CPLR article 78 proceeding to overturn respondent’s denial of petitioner’s application to return to the paraprofessional position he previously held at New York City Department of Education (DOE).
Petitioner worked as a paraprofessional with special needs children without blemish since 2002, until he made the selfish decision to get behind the wheel of a car and drive drunk in 2006, seriously injuring a pedestrian. Petitioner’s blood alcohol was double the legal limit.[1] He pleaded guilty in 2009 to a drunk driving assault in the second degree (Penal Law § 120.05 [4]). As a result of his guilty plea, DOE terminated petitioner’s employment in 2009. Petitioner maintains that he has been sober since the accident. He successfully completed treatment at Montefiore Medical Center, North Division Outpatient Chemical Dependancy Program. For the last four years petitioner has been employed—without incident—as a truck driver. His quest is supported by many people including public school principal Frank Hernandez, who interviewed petitioner and offered him a paraprofessional position at the principal’s school. His current employer submitted a letter of recommendation in support of his application.
By letter dated April 26, 2013, respondent denied petitioner’s application to return to DOE as a paraprofessional, because petitioner’s “criminal record history includes a recent felony offense for assault. Furthermore, statements made by you during the background interview that you were ‘under the influence’ of alcohol at the time of that incident, which subsequently caused substantial injury to a pedestrian.”
Arguments
Petitioner maintains that DOE’s denial violates Correction Law article 23 and/or the New York State or New York City Human Rights Laws (Executive Law art 15; Administrative Code of City of NY § 8-101 et seq.). Petitioner maintains that there is no evidence that his conviction or prior acts bear a “direct relationship” to his ability to perform as a paraprofessional or that *310 employing him poses an unreasonable risk to the safety and welfare of children.
Respondent counters that petitioner’s application was properly denied because DOE weighed the relevant statutory factors under article 23-A of the Correction Law and properly concluded that petitioner’s conviction and prior acts do bear a “direct relationship” to his ability to perform as a paraprofessional and that employing him poses an unreasonable risk to the safety and welfare of children.
In its answer, DOE specially points to a concern (not specified in its denial letter) that although petitioner had admitted in his interview with DOE that he drove drunk, he denied responsibility for hitting the pedestrian and denied having an alcohol problem. However, the DOE investigator assigned to interview petitioner, Colin Caldwell, did not reveal this concern on the “OPI Investigation Article 23-A Checklist.” In fact Caldwell states, in relevant part, that petitioner “contributed [sic, probably should be attributed] the DWI/accident to him being an alcoholic (at the time so he says).” He concludes that “the safety and welfare of its students would be at risk if Mr. Thomas was cleared. His admitted, albeit ‘cured’ alcoholism is too much concern for me to recommend he be able to work directly with children.” More than six months later, Gina Martinez, the manager of investigations with the Office of Personnel Investigations, submits an affidavit stating that she was also present at the interview with Caldwell and petitioner. She asserts that “petitioner admitted to being under the influence of alcohol while driving, but denied responsibility for hitting the pedestrian . . . [and] there was ‘no possibility’ that he struck the pedestrian at the time of the incident.” Also, she states that petitioner “discussed attending substance abuse treatment following his conviction, but continued to maintain that he never had a drinking problem.” This statement appears to contradict Caldwell’s more contemporaneous statement that petitioner attributed “the DWI/accident to him being an alcoholic (at the time so he says).” It is not clear why Caldwell did not reference the purported statements evidencing petitioner’s denial or whether Martinez accurately characterized petitioner’s level of denial.[2]
*311 Discussion
The standard of review of an agency decision denying the privilege of a license is whether the decision is arbitrary and capricious (see Matter of Arrocha v Board of Educ. of City of N.Y., 93 NY2d 361 [1999]).
Correction Law § 752, which is entitled “Unfair discrimination against persons previously convicted of one or more criminal offenses prohibited,” provides:
“No application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual’s having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of ‘good moral character’ when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless:
“(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or
“(2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.”
Under Correction Law § 753 (1), the following specific factors must be considered in making any determination:
“(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
*312 “(b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
“(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
“(d) The time which has elapsed since the occurrence of the criminal offense or offenses.
“(e) The age of the person at the time of occurrence of the criminal offense or offenses.
“(f) The seriousness of the offense or offenses.
“(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
“(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.”
In making this determination it is important for the agency to carefully analyze all the factors and to consider that
“[t]he Legislature has determined that, as a general rule, it is unlawful for a public or private employer to deny an application for a license or employment on the ground that the applicant was previously convicted of a crime. This general prohibition advances the rehabilitation and reintegration goals of the Penal Law. Furthermore, barring discrimination against those who have paid their debt to society and facilitating their efforts to obtain gainful employment benefits the community as a whole.” (Matter of Acosta v New York City Dept. of Educ., 16 NY3d 309, 320 [2011].)
Further, an applicant who has a certificate of relief from disabilities is entitled to a presumption of rehabilitation in regard to the specified offense (see Correction Law § 753 [2]). Petitioner has such a certificate and, therefore, is entitled to that presumption.
DOE considered all the requisite elements. However, DOE erroneously concluded that the crime, and the facts which surrounded petitioner’s plea, bore a “direct relationship” to the license’s requirement of working with children and failed to give effect to the presumption to which petitioner was entitled. This conclusion is arbitrary and capricious as there is no evi *313 dence in the record concerning this “direct relationship” nor does DOE ever articulate how petitioner’s crime or his prior acts bear a “direct relationship” with the job duties of a paraprofessional.[3] Instead the denial appears to be based simply on supposition unsupported by facts. Such decision-making does not comport with the Correction Law, and runs athwart to the presumption of rehabilitation afforded by Correction Law § 753 (2) (see e.g. Matter of Dellaporte v New York City Dept. of Bldgs., 106 AD3d 446 [1st Dept 2013] [denial of the renewal of a stationary engineer license was arbitrary and capricious because the conviction for theft of funds bore no direct relationship to the duties of a stationary engineering license and respondent failed to afford petitioner with the mandatory presumption of rehabilitation attendant to petitioner certificate of relief from disabilities]; Matter of Gil v New York City Dept. of Bldgs., 107 AD3d 632 [1st Dept 2013] [respondents arbitrarily concluded that petitioner’s convictions of mail fraud and money laundering bore a direct relationship to the duties and responsibilities attendant to a stationary engineer]; compare with Matter of Bonaventure v Perales, 106 AD3d 665 [1st Dept 2013] [direct relationship existed between petitioner’s crimes including convictions for assault and larceny and his employment as a security guard whose duties consisted primarily of the protection of persons and property]).
Further, DOE arbitrarily concluded that petitioner would pose an unreasonable risk to the safety and welfare of the children with whom he previously—and successfully—worked presumably because he would relapse or because he is in denial [4] (see e.g. Matter of Gil [respondents erred in concluding that petitioner posed an unreasonable risk to public safety or welfare because there was no evidence in the record that petitioner ever submitted false documents that related to his stationary engineer responsibilities or implicated public safety]). What *314 underlies Investigator Caldwell’s statement, that petitioner’s “admitted, albeit ‘cured’ alcoholism is too much concern for me to recommend he be able to work directly with children,” is a lack of trust that petitioner is, in fact, rehabilitated. This supposition is antithetical to the letter, spirit and purpose of the Correction Law which is meant to protect an ex-offender whose crime bears no direct relationship to the employment he seeks. Therefore, the law mandates that petitioner is entitled to a second chance.
It is hereby adjudged that the petition is granted without costs and disbursements; and it is further adjudged that the basis for denying petitioner employment, as stated in the April 16, 2013 letter, is arbitrary and capricious and annulled; and it is further ordered that respondent continue to process petitioner’s application for employment without regard to the crime and acts which were the subject of this proceeding; and it is further ordered that the application be processed on an expedited basis; and it is further ordered that this court retain jurisdiction to assure compliance with the provisions herein.

. Petitioner was employed with DOE starting in 1998 as a per diem.

. If petitioner denied having an alcohol problem, his belief would certainly be contradicted by the record. For example, by letter dated November 13, 2009, Elsie Sanchez from Montefiore Hospital indicates that petitioner’s “di *311 agnosis has been changed to Alcohol Dependence in remission.” Further, a psychiatric assessment indicates petitioner admitted alcohol abuse dating back to 1988-1989. The assessment further indicates that petitioner stopped drinking in 2006 as a result of the accident. Alcoholics Anonymous believes “[ojnee an alcoholic, always an alcoholic.” (See Alcoholics Anonymous: The Stray of How Many Thousands of Men and Women Have Recovered from Alcoholism, ch 3, at 33 [4th ed 2001] [The Big Book].) This, of course, does not mean that an alcoholic cannot remain sober his or her entire life but rather, that the disease can be stopped—but not cured. Although this tenet has its critics, the success of this organization is well known. Therefore, petitioner’s denial (to the extent that he has such denial) could be problematic because vigilance is part of process in combating the disease. However, even assuming petitioner has an unhealthy level of denial, it is still not a basis to deny him a paraprofessional license for the reasons explained herein.

. According to the affidavit submitted by DOE, the job duties of a paraprofessional include working under the direction of a teacher (a) assisting students in academic and nonacademic areas, as assigned by the classroom teacher; (b) attending to the physical needs of students, which may include dressing, feeding, and other activities of daily living; (c) assisting students at breakfast, lunch, bussing, related service periods, and during other out of classroom activities; and (d) assisting with student ambulation and mobility, which may include lifting, transferring, and repositioning students, as well as transporting students in wheelchairs.

. DOE never articulates why it has concluded that petitioner should not work with children, and therefore the court must speculate as to DOE’s reasons.