Chief Judge Lippman
(dissenting). The majority overlooks the policy animating Correction Law article 23-A — that people who have been convicted of crimes can be rehabilitated and that employment is critical in that effort. The entire purpose of the eight factors under Correction Law § 753 (1) is to ensure that employers act in furtherance of this policy and assist the reintegration of rehabilitated individuals into society. Because I believe the record makes it evident that the DOE failed to consider all eight factors, I would hold that its determination was arbitrary and capricious.
In enacting article 23-A, the legislature intended to recognize job-seeking individuals exactly like petitioner who, having engaged in past criminal activity, decide to lead a law-abiding life. It is clear that petitioner, now 62 years old, has presented overwhelming evidence of his rehabilitation and his move beyond criminal activity. He has been drug-free for 20 years, and continues to serve as an active member of the Bowery Mission Transitional Center. At the time that his application was reviewed, 18 years had passed since his last conviction and he had been working as a school bus driver for 15 years. He submitted to the DOE numerous references from friends, a minister, and employers who described his excellent relationships with the children, parents and schools he encountered as a bus driver. His employer described him as “upstanding,” “very dependable” and “a great asset to the company.” Despite all of this, and the Appellate Division’s remand for reconsideration due to the DOE’s initial error (Matter of Hasberry v New York City Dept. of Educ., 78 AD3d 609 [1st Dept 2010]), the DOE denied petitioner’s application by terse letter dated March 17, 2011 (“The New York City Department of Education’s Office of Pupil Transportation [OPT] has reevaluated your application for the position of school bus driver/escort. It is the opinion of the OPT that its original findings are correct and your application has been denied”). Then upon petitioner’s request under section 754 of the Correction Law, the DOE sent him another letter which found that his application must be denied because of the “direct relationship” between his criminal past and the job for which he seeks certification.
In fact, the DOE’s May 4, 2011 letter ignores the extensive evidence of rehabilitation submitted and the fact that petitioner *303 had been doing essentially the same job as that for which the license was sought. In it, the Executive Director of the OPT states:
“The nature of the criminal offenses committed by the applicant lead me to have grave doubt about his moral character and reliability. Moreover, it appears to OPT that the applicant failed to be completely truthful in his application for NYCDOE certification of approval. As a consequence of the for [e] going certification of approval for NYCDOE school bus service is hereby denied.”
As Justice Freedman stated:
“The letter’s reference to [petitioner’s] ‘untruthfulness’ is totally unsupported by any evidence . . . [and] [t]he conclusion reached by the executive director of OPT that he had ‘grave doubt about his [petitioner’s] moral character and reliability’ is belied by petitioner’s impeccable record of steady employment since 1994, and his employment as a school bus driver for public and private school pupils for 12 years without incident, his certificate of relief from disabilities, and his significant record of community service” (Matter of Dempsey v New York City Dept. of Educ., 108 AD3d 454, 460 [1st Dept 2013, Freedman, J., dissenting]).
Also very significant is the content of petitioner’s 15-minute interview by OPT personnel in February 2011, which shows what the DOE actually considered. During the interview, OPT investigators asked petitioner questions about where he used to sell drugs, the quantity of the drugs sold and how much he spent on his daily “habit.” Yet, they failed to ask questions about petitioner’s life in the 18 years since his last conviction in 1993. In fact, OPT asked no questions about petitioner’s recovery from addiction or about the documents he presented regarding his rehabilitation.
In Matter of Acosta v New York City Dept. of Educ. (16 NY3d 309, 315-316 [2011]), we specified that “ ‘[i]n making a determination’ as to whether either the ‘direct relationship’ exception or the ‘unreasonable risk’ exception applies,” “[a] failure to take into consideration each of these factors results in a failure to comply with the Correction Law’s mandatory directive” (citing Matter of Arrocha v Board of Educ. of City of N.Y., 93 NY2d *304 361, 364 [1999]). While the majority is correct that it is improper for courts to “engagfe] in essentially a re-weighing” of the section 753 (1) factors (Arrocha, 93 NY2d at 367), it is clear that the DOE simply failed to consider petitioner’s rehabilitation and work experience in making its determination.
The majority cites Acosta (16 NY3d at 319) for the proposition that “the DOE is not obliged ‘to point to any contemporaneously created record that demonstrates that it considered each of the eight factors in reviewing petitioner’s application.’ ” However, the majority fails to note that unlike here, the petitioner in Acosta did not make a section 754 request for an explanation of the DOE’s denial of her application. In fact, in that same paragraph in Acosta, we cited Correction Law § 754, distinguishing letters notifying the applicant of the decision from agency responses explaining such denials upon a petitioner’s request (16 NY3d at 319 [“but see Correction Law § 754 (providing that, if requested, a public agency or private employer that denies a person’s application for a license or employment on the basis of that person’s prior criminal conviction ‘shall provide, within thirty days of a request, a written statement setting forth the reasons for such denial’ ”)]). This is the second time in less than five years that a DOE hiring case like this has come before us and this is the second time the DOE considered this petitioner’s application. Yet, in each of these circumstances, the DOE’s response has been to completely avoid any mention of the petitioner’s rehabilitation after the petitioner’s section 754 request for an explanation as to why the application was denied. This is unacceptable.
“Although the Court cannot substitute its judgment for that of the agency, it has a duty to insure that the law is properly applied and that the decision is not based upon ‘speculative inferences unsupported by the record’ ” (Matter of El v New York City Dept. of Educ., 23 Misc 3d 1121 [A], 2009 NY Slip Op 50883 [U], *6 [Sup Ct, NY County 2009], quoting Matter of Sled Hill Cafe v Hostetter, 22 NY2d 607, 612-613 [1968]).
“[The] denial letter is particularly problematic here in that petitioner’s criminal history is the only evidence detailed in any meaningful respect. Thus, the decision on the whole, as drafted, suggests that it was based primarily, if not entirely, on petitioner’s criminal history, with little consideration of the other evidence and statutory factors” {id.).
*305 Additionally, the majority states that “petitioner adduces no evidence demonstrating that the DOE failed to consider the information he provided concerning his relevant employment history” (majority op at 300). While I do not suggest that we can order the DOE to grant petitioner’s application, the majority wrongly places the burden on petitioner to show that the DOE failed to consider each of the eight factors. Rather, the burden is on the DOE to show that petitioner’s conviction warrants a denial in this case.
The majority continues: “the record indicates that the DOE may simply have given ‘greater weight to . . . the fact and circumstances of [petitioner’s] conviction [s] than to . . . his subsequent accomplishments” (id. at 300). Contrary to the majority’s suggestion, I do not propose a re-weighing of the factors here — the problem is not that the DOE did not give enough weight to petitioner’s rehabilitation, but that it did not consider it at all.
Furthermore, implicit in its determination is that the DOE has created a bright-line rule that anyone with an adult drug felony conviction, no matter the circumstances, is unfit to be a school bus driver. However, the legislature has already addressed the issue of prior convictions, and decided exactly which criminal convictions bar one from becoming a school bus driver in New York (see Vehicle and Traffic Law § 509-cc [4] [a], [b]). Those convicted of violent and sexual offenses are prohibited from being school bus drivers, but not those convicted of drug offenses. The DOE has essentially created a permanent disqualification to employment where none exists under New York law. This analysis is particularly troubling where, as here, the convictions occurred more than 20 years before petitioner was granted a certificate of relief from disabilities — which specifically removes any barriers to driving a school bus — and has in fact driven a school bus in an exemplary manner for over 15 years. While the age of the individual at the time the crime was committed is a factor that may be considered, 20 years of rehabilitation would seem dispositive by any standard. “Petitioner’s age [at the time of the crime] ‘will never change — and if determinative, would bar Petitioner forever,’ and undermine the purpose of Article 23-A of the Correction Law” (Matter of Soto v New York State Off. of Mental Retardation & Dev. Disabilities, 26 Misc 3d 1215[A], 2010 NY Slip Op 50103[U], *7 [Sup Ct, Kangs County 2010], quoting Matter of Camulaire v New York City Bd. of Educ., NYLJ, Sept. 9, 1998 at 22, col 1 [Sup Ct, NY County]).
*306 Among criminologists, the main factors that predict whether a previous offender will cease criminal activity and reintegrate into society are the passage of time and employment. These factors are consistent across types of crime and the individual’s age when the crime occurred. “At all ages and potential turning points, those who fail to secure satisfying employment or create bonds with conventional others often return to their former lifestyles and the risk of criminal involvement that brings” (Neal Shover, Great Pretenders: Pursuits and Careers of Persistent Thieves 129 [1996]). Accordingly, in passing article 23-A, the legislature realized that unemployment is the greatest barrier to rehabilitation.
“Observers of our criminal justice system agree that the key to reducing crime is a reduction in recidivism (i.e. repeated criminal conduct by the same individuals). The great expense and time involved in successfully prosecuting and incarcerating the criminal offender is largely wasted if upon the individual’s return to society his willingness to assume a law-abiding and productive role is frustrated by senseless discrimination.
“Providing a former offender a fair opportunity for a job is a matter of basic human fairness, as well as one of the surest ways to reduce crime” (Governor’s Approval Mem, Bill Jacket, L 1976, ch 931, 1976 NY Legis Ann at 418).
“This bill represents a major advance in public policy; its vigorous enforcement can remove the second class status to which former offenders have been relegated regardless of their efforts to be lawabiding citizens” (Letter from Community Service Society, July 6, 1976, Bill Jacket, L 1976, ch 931). The actions of the DOE here represent the type of senseless discrimination article 23-A was enacted to prevent, and petitioner is one of the class of intended beneficiaries of this statute.
For these reasons, I would reverse the order of the Appellate Division and remand to the agency for further proceedings.
Judges Read, Pigott, Abdus-Salaam and Stein concur; Chief Judge Lippman dissents in an opinion in which Judge Rivera concurs.
Order affirmed, with costs, and certified question not answered as unnecessary.